## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY KELLY,<br>        Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-780** |
| | ) | **Electronically Filed** |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>        Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Nancy D. Kelly brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

seeking review of the final determination of the Commissioner of Social Security

("Commissioner") denying her applications pursuant to the Social Security Act ("Act") for

Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI")

under Title XVI.  Consistent with the customary practice in the Western District of Pennsylvania,

both parties have submitted cross-motions for summary judgment on the record developed at the

administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the

memoranda of the parties, and the entire record, the Court finds that the ALJ's decision that

plaintiff is not disabled is unsupported by substantial evidence.  The Court will, therefore, deny

the Commissioner's motion for summary judgment, grant plaintiff's motion for summary

judgment, and remand the case for further administrative proceedings.

### II.    Procedural History

Plaintiff initially filed applications for SSI and DIB on August 16, 2002, and September

24, 2002, respectively, alleging disability as of June 28, 2002. R. 12. After the initial denial of

these claims on January 3, 2003, plaintiff took no further action on those applications. Her

current application for SSI was protectively filed on June 28, 2004, and her current application

for DIB was filed on July 23, 2004. R. 12. In these applications, plaintiff alleges disability as of

April 18, 2004. R. 12. The claims were initially denied on September 8, 2004, prompting

plaintiff to file a timely request for a hearing on October 18, 2004. R. 12. On December 1, 2005,

a hearing was held in Morgantown, West Virginia, before ALJ Karl Alexander. R. 432.

Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. 435-445.

James Ganoe, an impartial vocational expert, was present for the entire hearing and testified

before its conclusion. R. 445-450.

    In a decision dated January 11, 2006, the ALJ denied plaintiff's claims for DIB and SSI.

R. 12-23. The ALJ found plaintiff to have the severe impairments of chronic low back pain, non-

insulin dependent diabetes mellitus, a history of hepatitis C, major depressive disorder, and

borderline personality disorder. R. 14. These impairments, though severe, did not meet or

medically equal an impairment listed in 20 C.F.R. § 404, Appendix 1, Subpart P, Regulations

No. 4. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that plaintiff

retained the residual functional capacity ("RFC") to perform a range of light work with additional

limitations that were specifically enumerated. R. 18. On the date of the decision, plaintiff was

forty-four years of age, and she had a high school education. R. 21. Based on the applicable

residual functional capacity and vocational assessments, the ALJ determined that plaintiff could

not return to her past relevant work as a cashier, security guard, correctional officer, machine

operator/laborer or receiving associate. R. 21. Nevertheless, the ALJ concluded that plaintiff

could work as a mail clerk, laundry worker/folder, general sorter, bench worker,

addresser/stuffer, or surveillance system monitor. R. 22. Mr. Ganoe's testimony established that

these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. 447-

448.

The Appeals Council denied plaintiff's request for review on April 21, 2006, thereby

making the ALJ's decision the final decision of the Commissioner in this case. R. 5-7. Plaintiff

commenced this action against the Commissioner on June 14, 2006, seeking judicial review of

the Commissioner's decision.

III.    **Statement of the Case**

Plaintiff suffers from several exertional and nonexertional impairments. In his decision,

the ALJ made the following findings:

1.   The claimant meets the non-disability requirements for a period of disability and
     disability insurance benefits set forth in section 216(i) of the Social Security Act
     through December 31, 2008.

2.   The claimant has not engaged in substantial gainful activity since April 18, 2004
     (20 CFR §§ 404.1520(b) and 416.920(b)).

3.   The claimant has the following severe impairments: chronic low back strain; non-
     insulin dependent diabetes mellitus; history of hepatitis C; major depressive
     disorder; and borderline personality disorder (20 CFR §§ 404.1520(c) and
     416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that
     meets or medically equals one of the listed impairments in 20 CFR 404, Subpart
     P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5.   Upon careful consideration of the entire record, the undersigned finds that the
     claimant has the residual functional capacity to perform a range of light work;
     requires a sit/stand option; can perform all postural movements occasionally,
     except cannot climb ladders, ropes or scaffolds; should not be exposed to
     temperature extremes; should work in a low stress environment with no

production line type of pace or independent decision making responsibilities; is limited to unskilled work involving only routine and repetitive instructions and tasks; and should have no more than occasional interaction with other people.

6.   The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7.   The claimant was born on January 6, 1960 and was 44 years old on the alleged disability onset date, which is defined as a younger individual (20 CFR §§ 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9.   The claimant's limitations preclude the transferability of any acquired job skills (20 CFR §§ 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from April 18, 2004 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

R. 14-22.

In the instant action, plaintiff argues that the ALJ inadvertently misconstrued a report completed by her treating psychiatrist, thereby depriving the Commissioner's decision of the "substantial evidence" needed to sustain it.

## IV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

_____

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

---

hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:

The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

"substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart,* 399 F.3d 546, 552

(3d Cir. 2005); *Ventura,* 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS,* 841

F.2d 57, 59 (3d Cir. 1988).

    The Court of Appeals for the Third Circuit has referred to this standard as "less than a

preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart,* 312 F.3d 113,

118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.,* 48

F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if

the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v.

Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker,* 710 F.2d 110, 114 (3d

Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet

avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v.

Secretary of HEW,* 714 F.2d 287, 290 (3d Cir.1983).

    In reviewing the record for substantial evidence, the district court does not weigh the

evidence or substitute its own conclusions for those of the fact finder. *Rutheford,* 399 F.3d at

552. In making this determination, the district court considers and reviews only those findings

upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the

medical record by supplying additional findings from its own independent analysis of portions of

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d

34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on

medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

### Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

### Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered

9

substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to

---

[3]      Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits."

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834

F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could

reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
> must provide some explanation for a rejection of probative evidence which
> would suggest a contrary disposition. . . . The [Commissioner] may properly
> accept some parts of the medical evidence and reject other parts, but she must
> *consider* all the evidence and *give some reason for discounting* the evidence she
> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of

such an indication, the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

 Medical Source Opinion of "Disability"

 However, a medical statement or opinion expressed by a treating source on a matter

reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not

dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683

(3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527

(1989) indicates that [a] statement by your physician that you are disabled or unable to work does

not mean that we will determine that you are disabled. We have to review the medical findings

and other evidence that support a physician's statement that you are disabled.") (internal citations

omitted).

 The rules and regulations of the Commissioner and the SSA make a distinction between

(I) medical opinions about the nature and severity of a claimant's impairments, including

symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for

the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of

medical opinions are on matters which require dispositive administrative findings that would

direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002)

(consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002)

(distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they always must be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

---

[4]      Subsection (d) states: "How we weigh medical opinions. Regardless of its source,
we will evaluate every medical opinion we receive. Unless we give a treating source's opinion
controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in
deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection
(d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these
> sources are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual  examinations, such as
> consultative examinations or brief hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence in your case
> record, *we will give it controlling weight*. When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and
> (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6)
> of this section in determining the weight to give the opinion. *We will always give
> good reasons in our notice of determination or decision for the weight we give your
> treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527

---

[5]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

(d)(2). *See* note 4, *supra.* Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V. Discussion**

In her brief, plaintiff raises a single issue in support of her request for a remand.  She contends that the ALJ misconstrued a critical report completed by her treating psychiatrist, Dr.

Terry Roh. Dr. Roh completed a "Mental Status Questionnaire" form on August 4, 2005. R. 367-369. In that report, Dr. Roh noted that plaintiff suffered from borderline personality disorder, which manifested itself through unstable and intense interpersonal relationships, a persistently unstable self-image, impulsivity, affective instability, chronic feelings of helplessness, inappropriate and intense anger, and self-destructive behavior (i.e., plaintiff's act of cutting herself). R. 367. Plaintiff's prognosis was described as guarded. R. 367.

With respect to functional limitations, Dr. Roh opined that plaintiff experienced mild limitations in her activities of daily living, marked or extreme limitations in her social functioning, and marked limitations in her ability to maintain the concentration necessary to complete a task.[6] R. 368. This meant that she was occasionally unable to perform activities of daily living, generally unable to maintain normal or appropriate relationships, with frequent (or persistent) serious disruptions due to behavioral extremes, and generally unable to complete complex tasks (and frequently unable to complete even simple tasks in a regular and continuous work setting). R. 368. Dr. Roh also reported that plaintiff was functioning better while in treatment than she would in an employment-related setting. R. 369.

The confusion in the report, which plaintiff calls to the Court's attention, concerns Dr. Roh's answer to the following question:

> In an average month, how many days would your client likely be unable to function in a routine job setting (for all or a significant part of a work day) due to exacerbation of psychologically based symptoms?

---

[6]Under the social functioning heading, Dr. Roh circled both "marked" and "extreme," making it difficult to determine which degree of limitation he believed to be the most accurate description of plaintiff's experience. R. 368. In any event, it is clear that he believed that she had, at a minimum, marked limitations in this category.

R. 369.  Dr. Roh placed a checkmark next to the word "None."  R. 369.  Nevertheless, within the

text of the question itself, he crossed out the letters "un" in the word "unable."  R. 369.

Therefore, it appears that the word "None" referred to the number of days in an average month

that plaintiff would be *able* to function in a routine job setting.  The ALJ, however, thought that

the word "None" referred to the number of days in an average month that plaintiff would be

*unable* to function in a routine job setting.  R. 20-21.  In his decision, the ALJ stated as follows:

> The claimant's treating source for her mental impairments has given conflicting
> statements regarding the severity of the claimant's impairments.  In the statement
> submitted on August 8, 2005, the treating source speculated that it was very possible that
> the increased stress associated with employment would result in the claimant
> decompensating and transferring her anger and impulsiveness to those in the workplace
> (Exhibit 11F).  However, in the mental status questionnaire the treating source opined
> that there would be no days in an average month during which the claimant would be
> unable to function in a routine job setting (for all or a significant part of the workday) due
> to exacerbation of psychologically based symptoms (Exhibit 11F).  Considering the
> speculative nature of the opinion on the ultimate issue reserved to the Commissioner
> (Social Security Ruling 96-5p) and the fact that it conflicts with the other opinion of the
> treating source, the undersigned finds that controlling weight (Social Security Ruling
> 96-2p) cannot be given to this opinion.  The Administrative Law Judge finds that the
> claimant's mental impairments have been adequately accommodated by limiting her to
> the mental demands of the range of light work detailed above.

R. 20-21.  The language in the ALJ's discussion about Dr. Roh's report clearly indicates that, at

the time of his decision, the ALJ believed that Dr. Roh had found plaintiff to be *unable* to work

on "None" of the days in an average month.

The United States Court of Appeals for the Third Circuit has recognized that medical

evidence from a treating source is of diminished value when it is "internally contradictory."

*Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  In the instant case, however, it appears as

though the ALJ viewed Dr. Roh's report to be "internally contradictory" even though it was

actually consistent.  While the ALJ was free to weigh the evidence of record and come to a well-reasoned conclusion as to whether plaintiff was statutorily disabled, he was not free to mischaracterize the evidence.  *Mason*, 994 F.2d at 1066, n. 11.  Where a critical piece of evidence has been mischaracterized at the administrative level, it cannot be said that the underlying determination is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g).  *Colon v. Barnhart*, 424 F.Supp.2d 805, 809-810 (E.D.Pa. 2006); *Aragon-Lemus v. Barnhart*, 280 F.Supp.2d 62, 70-71 (W.D.N.Y. 2003); *Boscher v. Heckler*, 583 F.Supp. 357, 362 (E.D.Pa. 1984).  The Court acknowledges that Dr. Roh's notation, which came in the form of a mark through the letters "un" in "unable," constituted a departure from the conventional manner of completing the Mental Status Questionnaire form.  Nonetheless, it appears that Dr. Roh's notation, within the context of the entire report, meant the exact opposite of what the ALJ construed it to mean.

The ALJ's treatment of Dr. Roh's report is problematic for another reason.  The mischaracterization of the report appears to not only be the ALJ's reason for not giving Dr. Roh's opinion (with respect to plaintiff's functional limitations) "controlling weight," but also his reason for rejecting that opinion in the course of the more general evidentiary determination.[7]  After determining that Dr. Roh's opinion was not entitled to controlling weight, the ALJ still had an obligation to give that opinion whatever weight that it was due.  *Schwartz v. Halter*, 134 F.Supp.2d 640, 653 (E.D.Pa. 2001)("Further, the ALJ did not even discuss the weight to be given

---

[7]At the third step of the sequential evaluation process, the ALJ opined that Dr. Roh's opinion reflected plaintiff's subjective complaints rather than Dr. Roh's independent findings.  R. 17.  In the instant action, plaintiff does not appear to challenge the Commissioner's determination at that step.

to Dr. Fly's opinion after determining that it would not be given controlling weight. Instead, he implicitly rejected the opinion of the treating physician in its entirety."). Under these circumstances, this case must be remanded to the Commissioner for further administrative proceedings. *Id.* at 653. On remand, the Commissioner shall reevaluate plaintiff's claim in a manner which is consistent with Dr. Roh's actual opinion.

The need for further examination regarding plaintiff's nonexertional impairments is highlighted by the ALJ's acknowledgment that Dr. Joseph Chadwick, another treating source, had opined that plaintiff's mood disorder "complicated employability." R. 20. This observation by the ALJ was a reference to a treatment note dated September 20, 2005. R. 400. In that note, Dr. Chadwick reported that while plaintiff was not disabled as a result of any physical limitations, her employability was complicated by her mood disorder. R. 400. The ALJ rejected Dr. Chadwick's opinion regarding plaintiff's nonexertional limitations on the ground that it was "related to an area outside his area of expertise." R. 20.

The ALJ adequately explained why plaintiff's exertional limitations did not preclude substantial gainful activity. R. 18-20. Nevertheless, he did not identify medical evidence regarding plaintiff's nonexertional impairments which conflicted with the opinions of Dr. Roh and Dr. Chadwick. Instead, he mischaracterized Dr. Roh's opinion as contradictory (albeit inadvertently) and rejected Dr. Chadwick's opinion as being outside of his area of expertise. R. 20-21. While the ALJ may have had good reasons for not giving the opinions of these treating sources controlling weight, he identified no countervailing evidence which justified rejecting them outright. R. 20-21. Consequently, his determination cannot remain undisturbed. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative

inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(internal quotation marks omitted).

The Court acknowledges that, at an earlier point in the opinion, the ALJ mentioned the report of Dr. Roger Glover, who completed a "Psychiatric Review Technique" form on September 7, 2004. R. 16, 332. Dr. Glover indicated that plaintiff's mental impairments were not severe. R. 332. Evaluating her impairments under Listing 12.04 (Affective Disorders), Dr. Glover opined that plaintiff experienced mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation for an extended duration. R. 342. Although the ALJ relied on Dr. Glover's findings in determining that plaintiff's impairments did not meet or medically equal a list impairment, he did not mention these findings in rejecting the opinions of Dr. Roh and Dr. Chadwick with respect to plaintiff's residual functional capacity. R. 16-21. Although the ALJ rejected Dr. Glover's conclusion that plaintiff's mental impairments were not severe, that should come as no surprise. At the second step of the sequential evaluation process, all doubts must be resolved in favor of the claimant. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). "[T]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* Reliance on Dr. Glover's opinion at the third step of the process (i.e., the equivalence step) cannot be equated with reliance on it in determining a claimant's residual functional capacity. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted

impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Thus, the ALJ's focus on Dr. Glover's opinion appears to have been relevant only to the question of equivalence. R. 16. Dr. Glover's conclusion was not relied upon as a basis for determining that plaintiff had a residual functional capacity which exceeded the limitations proposed by Dr. Roh. R. 18-21.

Dr. Roh's opinion, insofar as it specified particular functional limitations, was a "medical opinion." The applicable regulations state that "[m]edical opinions are statements from physicians and psychologists or other acceptable sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Unlike the overall residual functional capacity assessment, Dr. Roh's opinion (as to specific functional limitations) was not on a matter reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphasis added). While a "medical opinion" accounts for what a claimant can or cannot do despite his or her *impairments*, a claimant's "residual functional capacity" is based on the most that a claimant can do despite his or her *limitations*. 20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2), 416.945(a)(1); *Oderbert v. Commissioner of Social Security*, 413 F.Supp.2d 800, 803 (E.D.Tex. 2005). Impairments result in limitations, which is why the Commissioner considers all of the claimant's impairments in making a residual functional capacity assessment. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The importance of Dr. Roh's opinion is apparent when Mr. Ganoe's vocational expert testimony is taken into consideration. At the hearing, plaintiff's attorney asked Mr. Ganoe whether the specific functional limitations found by Dr. Roh would compromise plaintiff's ability to work in the positions identified as being consistent with the ALJ's hypothetical question. R. 448-450. Mr. Ganoe indicated that, depending on the precise degree of limitation, plaintiff may not be able to maintain employment in the relevant positions. R. 448-450. While the ALJ was certainly not required to accept the limitations mentioned by plaintiff's attorney, he was not free to reject them on the basis of a mischaracterization of Dr. Roh's opinion. It appears that the ALJ did just that. Given the dispositive nature of the difference between the degree of limitation found by Dr. Roh and the degree of limitation found by the ALJ, the Commissioner's decision cannot stand on the basis of an oversight like the one which plaintiff calls to the Court's attention in this case.

In order to be supported by substantial evidence, a residual functional capacity assessment must reflect the combined effect of all of a claimant's impairments. This determination must account for exertional and nonexertional impairments alike. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982)("The fact that work exists in the national economy for a person who *only* has Burnam's exertional impairments, or for a person who *only* has his nonexertional impairments, does not mean that work exists in the national economy for a person who suffers from *both* types of impairments simultaneously.")(emphasis in original). Since the ALJ's findings regarding the degree of limitation caused by plaintiff's nonexertional impairments are not supported by substantial evidence, the case must be remanded to the Commissioner for further proceedings. While the Commissioner is certainly not required to include every limitation *alleged* by plaintiff

26

in the residual functional capacity assessment, he must include every limitation that is found to be *credibly established*. *Rutherford*, 399 F.3d at 554.

A close examination of the hearing transcript reveals that plaintiff's primary bases for claiming to be disabled were her nonexertional impairments. When asked by the ALJ what was preventing her from working on a regular basis, she identified her "mental disability." R. 436. She discussed her exertional impairments only after the ALJ asked her how her hepatitis C impacted her ability to perform job-related tasks. R. 441. Plaintiff testified that she had recently been admitted to a hospital after trying to commit suicide. R. 439. She further testified that she had been seeing Dr. Roh on a monthly basis. R. 439-440. The record clearly establishes that Dr. Roh was plaintiff's treating psychiatrist. Regardless of the weight to which Dr. Roh's opinion should have been given, it is clear that the ALJ needed to construe that opinion accurately in order to properly evaluate plaintiff's case.

In *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit made it clear that the rule laid down by the United States Supreme Court in *Securities Exchange Commission v. Chenery Corporation*, 318 U.S. 80 (1947), applies in this context. *Fargnoli*, 247 F.3d at 43-44, n. 7. In *Chenery*, the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery*, 332 U.S. at 196. In this case, the Commissioner's primary reason for rejecting the

opinion of Dr. Roh appears to have been an erroneous interpretation of the very report in which that opinion was contained. Since Dr. Roh apparently meant the exact opposite of what the ALJ believed him to mean, further administrative proceedings are required.

## VI. Conclusion

Despite the ALJ's thorough explanation as to why he did not find plaintiff's exertional impairments to be disabling, his determination as to plaintiff's nonexertional impairments is not supported by substantial evidence. On remand, the Commissioner shall reconsider Dr. Roh's opinion. Furthermore, if the Commissioner chooses to reject the opinions of plaintiff's treating sources, he must do so only on the basis of countervailing medical evidence. Accordingly, the Court will grant plaintiff's motion for summary judgment, deny defendant's motion for summary judgment, and remand this case to the Commissioner for further administrative proceedings. An appropriate order will follow.

Arthur J. Schwab
United States District Judge

cc: All counsel of record